# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

| | |
|---|---|
| In re:<br><br>ENER1, INC.<br><br>Debtor. | Chapter 7<br><br>Case No. 23-02997-RLM-7 |

**TRUSTEE'S MOTION TO SELL PROPERTY
FREE AND CLEAR OF ANY INTEREST BY PUBLIC
AUCTION WITH NO PREVIOUSLY IDENTIFIED INITIAL BIDDER**

Deborah J. Caruso, the chapter 7 trustee in this case (the "Trustee"), by counsel, requests entry of an order, pursuant to 11 U.S.C. §§ 105 and 363, Rule 6004 of the Federal Rules of Bankruptcy Procedure, and S.D.Ind. B-6004-3, authorizing the sale of certain intellectual property, free and clear of all liens, encumbrances, claims, if any, and interests, at an auction sale with no previously identified initial bidder, on the following grounds:

### I. JURISDICTION

1.      The Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The predicates for relief are sections 105 and 363 of Title 11 of the United States Code (the "Bankruptcy Code"), Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and S.D.Ind. B-6004-3.

### II. BACKGROUND

4.      On July 13, 2023 (the "Petition Date"), Ener1, Inc. (the "Debtor") filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code.  The Trustee was appointed interim trustee in this case on the Petition Date.

5.      On July 31, 2023, the *Order Dismissing Case* [Doc 10] was entered. On August 2, 2023, the *Order on Motion for Relief from Dismissal Order and Notice of Reappointment of Trustee* [Doc 13] was entered, reinstating the case, and reappointing the Trustee as the interim trustee. In accordance with section 702(d) of the Bankruptcy Code, the Trustee became the permanent case trustee on September 12, 2023, following the conclusion of the meeting of creditors held pursuant to section 341(a) of the Bankruptcy Code.

6.      In addition, on the Petition Date, the Debtor's wholly owned subsidiary, EnerDel, Inc. ("EnerDel") filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code, Case No. 23-02996-RLM-7 (the "EnerDel Case"). Sarah L. Fowler (the "EnerDel Trustee") was appointed interim trustee in the EnerDel Case on the Petition Date and, in accordance with section 702(d) of the Bankruptcy Code, became the permanent case trustee on September 19, 2023, following the conclusion of the meeting of creditors held in the EnerDel Case pursuant to section 341(a) of the Bankruptcy Code.

7.      During the meeting of creditors in this case, the Debtor's representative testified that the creditors of the Debtor and EnerDel as listed on the respective Schedules were identical because the Debtor did not have any creditors separate and apart from those creditors of EnerDel. The only difference between the Debtor's Schedules and EnerDel's Schedules is that the creditors of the Debtor were listed as being owed $0 while the creditors of EnerDel were listed with either an amount or "unknown." The Debtor's representative further testified that the Schedules were done this way because the Debtor did not have operations separate from EnerDel, and it was EnerDel that was the operating entity while the Debtor was simply the parent company of EnerDel.

### III. ASSETS OF THE DEBTOR AND ENDERDEL

8. Following the conclusion of the meeting of creditors in this case and in the EnerDel Case, the Trustee and the EnerDel Trustee have worked to obtain information regarding the assets that are property of each respective estate to determine whether the liquidation of these assets will provide a meaningful distribution to unsecured creditors. The Trustee and the EnerDel Trustee have also engaged in extensive research regarding the alleged liens on the assets of the Debtor and EnerDel.

9. The Trustee and the EnerDel Trustee have learned that prior to the Petition Date, EnerDel manufactured lithium ion battery packs at its warehouse and plant located at 3619 W. 73rd Street, Anderson, Indiana 46011 (the "Anderson Plant"). In the same office park, EnerDel also maintained its home office at 2701 Enterprise Dr., Anderson, Indiana (the "Anderson Office," and together with the Anderson Plant, the "Anderson Locations").

10. When EnerDel ceased operations at the end of June 2023, all assets at the Anderson Locations were left and currently remain as they were in the Anderson Locations.

11. The assets at the Andersons Locations include but are not limited to inventory, equipment, tools, personal property, and office equipment, all as more specifically set forth on EnerDel's Schedules and on an Asset List provided by EnerDel to the EnerDel Trustee that is attached as **Exhibit A** and incorporated herein (collectively, the "Personal Property").

12. In addition to the Personal Property, EnerDel is also the owner of certain intellectual property including numerous patents and trademarks. The intellectual property owned by EnerDel was not listed on the Schedules with any specificity. Further, during the meeting of creditors, the representatives of the Debtor and of EnerDel testified that they did not have a list of all the intellectual property owned by the Debtor and EnerDel.

13. A search of the records of the United States Patent and Trademark Office and the United States Copyright Office reflects that EnerDel is the owner or assignee of certain patents and trademarks. The EnerDel Trustee is still investigating EnerDel's intellectual property and whether the patents and trademarks are current and should be offered for sale. Any and all patents and trademarks and other intellectual property of EnerDel shall be referred to herein as the "EnerDel Intellectual Property."

14. Based on Debtor's Schedules and the Trustee's initial research, it appears the Debtor's only assets are certain intellectual property including numerous patents and trademarks. The Trustee will continue to investigate if there are other assets owned by the Debtor, including but not limited to any legal claims and causes of action against affiliates of the Debtor or any third parties. The intellectual property owned by the Debtor was not listed on the Debtor's Schedules with any specificity and during the meeting of creditors, the representatives of the Debtor and of EnerDel testified that they did not have a list of all the intellectual property owned by the Debtor and EnerDel.

15. A search of the records of the United States Patent and Trademark Office and the United States Copyright Office reflects that the Debtor is the owner or assignee of certain patents. The Trustee is still investigating the Debtor's intellectual property and whether the patents are current and should be offered for sale. Any and all patents and trademarks and other intellectual property of the Debtor shall be referred to herein as the "Ener1 Intellectual Property," and together with the EnerDel Intellectual Property, the "Intellectual Property."

16. The Trustee and the EnerDel Trustee will work with the Auctioneer (as defined below) to determine what Intellectual Property should be offered for sale at the auction.

4

## IV. THE PUBLIC AUCTION

17. Based on the review and analysis of the Personal Property and the Intellectual Property owned by the Debtor and EnerDel and the alleged liens on such assets, the Trustee and the EnerDel Trustee determined it is in the best interest of each estate and each of their creditors to liquidate the assets of the Debtor and EnerDel by a joint public auction.

18. Contemporaneously with the filing of this motion, the EnerDel Trustee is filing a similar sale motion related to the sale of the Personal Property and the EnerDel Intellectual Property in the EnerDel Case. Both the Trustee and the EnerDel Trustee are also filing applications in each of their respective cases to employ KD Capital Auctions LLC as the auctioneer (the "Auctioneer"), 7918 E. McClain Dr., #101, Scottsdale AZ 85260, Phone: 480-455-3910, www.kdauctions.com, to conduct a public auction of both the Personal Property and the Intellectual Property.

19. The Trustee, the EnerDel Trustee, and the Auctioneer all believe that selling the Personal Property and Intellectual Property in the same sale and by public auction will be the most efficient way to produce the best return for creditors while also attempting to minimize administrative expenses of each of the bankruptcy estates.

20. The Auctioneer will conduct an online auction of the Personal Property and the Intellectual Property on the terms more specifically set forth in the Engagement Agreement proposed between the Trustee and the EnerDel Trustee and the Auctioneer attached as **Exhibit B** and incorporated herein.

21. The auction will be conducted entirely online with the assets being sold to the highest bidder for each respective asset lot. The Auctioneer will not receive a commission from

the sale itself but will charge a buyer's premium of 15% to each of the winning bidders in addition to a 3% service fee to cover the costs of conducting the auction online for a total of 18%.

22. The Auctioneer will charge a total of $25,000 to cover the expenses associated with preparing for and hosting the auction sale, which funds will be advanced by the Auctioneer and then paid from the proceeds of the sale.

23. There will be a required minimum bid in place with respect only to the Intellectual Property of $150,000.

24. All Personal Property and Intellectual Property will be sold "AS IS, WHERE IS, WITH ALL FAULTS" with no representations or warranties of any kind being made to prospective buyers and shall be so advertised by the Auctioneer.

25. Section 363(b)(1) of the Bankruptcy Code is not implicated because the Ener1 Intellectual Property does not include any personally identifiable information.

26. The Auctioneer anticipates that the auction will be concluded, and all items shall be removed by the winning bidders from the Anderson Locations by approximately January 19, 2024. The removal of the Personal Property from the Anderson Locations will reduce administrative expenses of the bankruptcy estates.

27. More specific information regarding the auction sale and any relevant bid procedures may be obtained from the Auctioneer's website (www.kdauctions.com) or by calling the Auctioneer (480-455-3910).

### V. PARTIES THAT MAY ASSERT AN INTEREST

28. Because the Debtor is a Florida entity, the Trustee reviewed the Debtor's Schedules and conducted searches in the Office of the Secretary of State of Florida, the United

States Patent and Trademark Office and the United States Copyright Office to determine what parties may claim an interest in the Ener1 Intellectual Property.

29. Because EnerDel is a Delaware entity, the EnerDel Trustee reviewed EnerDel's Schedules and conducted searches in the Office of the Secretary of State of Delaware, the United States Patent and Trademark Office and the United States Copyright Office to determine what parties may claim an interest in the Personal Property and/or the EnerDel Intellectual Property.

30. In addition, although not the proper place to file a UCC-1 Financing Statement against the Debtor or EnerDel, the Trustee and the EnerDel Trustee also conducted searches in the Office of the Secretary of State of Indiana to determine what parties may claim an interest in the Personal Property and Intellectual Property.

31. Based on the reasonably diligent inquiry, the Ener1 Trustee and the Trustee believe the following parties may assert liens, encumbrances, claims or interests in either the Personal Property or the Intellectual Property:

  (a) Bzinfin, S.A. ("Bzinfin") arising from UCC-1 Financing Statement that was filed with the Secretary of State's Office in Delaware on December 2, 2022, as Filing No. 20229958109, asserting a lien against EnerDel's right, title and interest in and to all of EnerDel's assets, equity interests and other collateral as defined in a Loan Agreement (defined below);

  (b) Bzinfin arising from a UCC-1 Financing Statement that was filed with the Secretary of State's Office in Florida on December 2, 2022, as Filing No. 202203798759, asserting a lien against the Debtor's right, title and interest in and to all of the Debtor's assets, equity interests and other collateral as defined in the Loan Agreement;

  (c) IMFS LLC ("IMFS") arising from a UCC-1 Financing Statement that was filed with the Secretary of State's Office in Indiana on July 29, 2021, as Filing No. 202107302810645, asserting a lien against EnerDel's personal property and rights in and to property, tangible and intangible relating to certain sales contracts as defined in a loan agreement dated as of July 22, 2021, between EnerDel and IMFS;

7

  (d) The Treasurer of Madison County (Indiana) ("Madison County Treasurer") arising from personal property taxes that may be due and owing in connection with the Personal Property;

  (e) Indiana Department of Revenue (the "IDOR") arising from certain warrants against EnerDel for unpaid taxes;

  (f) Flagship Enterprise Center Inc. (the "Landlord") arising from a lease with EnerDel for the Anderson Properties;

  (g) Odyne Systems LLC ("Odyne") arising from certain alleged propriety information that belongs to Odyne and may be used in connection with the Personal Property; and

  (h) Komatsu Mining Corp. Group ("Komatsu") arising from certain alleged propriety information that belongs to Komatsu and may be used in connection with the Personal Property.

(collectively, the "Interested Parties"). For the avoidance of doubt, Bzinfin is the only party believed to have any purported interest in the Ener1 Intellectual Property.

  32. On information and belief, there are no other liens, encumbrances, claims of record, or other interests in connection with the Personal Property or Intellectual Property.

  33. Given the fact that the only asset of the Debtor's estate appears to be the Ener1 Intellectual Property, this motion will only address matters related to the sale of the Ener1 Intellectual Property. However, the EnerDel Trustee is contemporaneously filing a similar motion requesting approval of the sale of the Personal Property and the EnerDel Intellectual Property and such motion fully addresses all matters related to the sale of such assets, including any interest held by the Interested Parties in the Personal Property and EnerDel Intellectual Property.

## VI. ALLEGED INTEREST OF BZINFIN

34. Upon initial review of the Schedules of both the Debtor and EnerDel, it appears that Bzinfin has a lien on all assets of both the Debtor and EnerDel whose claim far exceeds the value of all assets owned by the Debtor and EnerDel.

35. However, during their investigation, the Trustee and the EnerDel Trustee have discovered certain information not contained in the respective Schedules or Statements of Financial Affairs that they believe lead to the conclusion that not only does Bzinfin not have a secured claim against either the Debtor or EnerDel, but more than likely, any claim Bzinfin may have is subject to subordination to all other creditors of both the Debtor and EnerDel.

### A. History of Zingarevich/Bzinfin's Ownership Interest in Ener1.

36. The initial investigations by the Trustee and the EnerDel Trustee have led them to believe that Boris Zingarevich ("Zingarevich"), who owns and controls Bzinfin, has been in control of the Debtor as far back as 2002. Upon information and belief, Zingarevich was a director of Ener1 Group, Inc. f/k/a Ener 1 Holdings, Inc. ("Ener1 Group"), which pursuant to certain SEC filings in 2002, was controlled by Bzinfin and Z-N LLC. These same SEC filings also state that Bzinfin is owned and controlled by Zingarevich.

37. Pursuant to a Securities Purchase Agreement dated December 21, 2001, as of January 3, 2002, Ener1 Group acquired 47,126,416 shares of common stock of the Debtor,[1] representing 80.0% of the outstanding common stock at the time. As stated in the SEC filings, the purpose of this transaction was to provide Ener1 Group with control of the Debtor, and as a result of such control, giving Ener1 Group the ability to appoint a majority of the members of the Board of Directors of the Debtor. It is also believed that at this time, Zingarevich directly owned

---

[1] At the time of the Securities Purchase Agreement, the Debtor was known as Inprimis, Inc. The entity changed its name from Inprimis, Inc. to Ener1, Inc. in 2002.

9

200,000 shares of common stock in the Debtor, which together with the common stock held by Ener1 Group, resulted in Zingarevich controlling approximately 80.3% of the outstanding common stock of Ener1. Further, it is believed that later in 2002, Zingarevich purchased approximately 203,000 additional shares of common stock in the Debtor.

**B. Bzinfin's Current Alleged Claim.**

38. Bzinfin filed its Proof of Claim (Claim No. 2 in this case and Claim No. 3 in the EnerDel Case) on August 9, 2023, asserting a secured claim in the amount of $70,350,362.00.

39. Despite having a claim in excess of $70 million, Bzinfin attaches only three exhibits to its Proof of Claim: Exhibit A - Loan Agreement dated as of March 30, 2012 among the Debtor as Borrower, certain subsidiaries of the Debtor as Guarantors, various Lenders, Wilmington Trust, National Association, as Administrative Agent and Collateral Agent evidencing a $39,629,625.06 term loan (the "Loan Agreement"); Exhibit B - Collateral Agreement dated as of March 30, 2012 by and among the Debtor, each subsidiary of the Borrower party hereto (including EnerDel), and Wilmington Trust National Association as Collateral Agent for the secured parties (the "Collateral Agreement"); and Exhibit C - Promissory Note in the amount of $350,000.00 dated March 2, 2023 by and between ALF Consulting SA as "Payee" and the Debtor (the "Note").

40. Remarkably, the Proof of Claim fails to include any evidence of perfection of any purported security interest with any Secretary of State or with the United States Copyright Office and/or the United States Patent and Trademark Office.

41. Additionally, the Proof of Claim fails to include any evidence to demonstrate how a term loan in the amount of $39,629,625.06 has ballooned to $69,966,029 as set forth in the Proof of Claim.

42. The Loan Agreement and the Collateral Agreement constitute transactions arising in conjunction with a Bankruptcy Plan confirmed by the United States Bankruptcy Court for the Southern District of New York on February 28, 2012 Case No. 12-10299-MG (the "<u>2012 Chapter 11 Plan</u>") reorganizing the Debtor. The 2012 Chapter 11 Plan is referenced in the Loan Agreement as a "related agreement" but is not attached to the Proof of Claim.

43. At or about the time of the 2012 Chapter 11 Plan, Zingarevich held, directly or indirectly through Bzinfin or other related entities, 104,376,280 shares of the outstanding common stock of the Debtor (constituting 55.8% of the outstanding shares). Also, at the time of the 2012 Chapter 11 Plan, Bzinfin was a creditor of the Debtor having extended a line of credit dated June 29, 2011 in the maximum amount of $15,000,000.00 with a balance of $11,241,000.00 as of January 26, 2012.

44. Pursuant to the 2012 Chapter 11 Plan, all Zingarevich's shares in the Debtor were extinguished, and all of the Debtor's obligations to Bzinfin were converted to equity.

45. By virtue of the 2012 Chapter 11 Plan, Bzinfin had sufficient shares in the reorganized Debtor to control three seats on the five member Board of Directors of the Debtor.

46. Further, pursuant to the 2012 Chapter 11 Plan, the lenders set forth in the Loan Agreement (the "<u>Lenders</u>"), which held pre-petition unsecured priority debt and did **not** include Bzinfin, converted a portion of the pre-petition debt to the secured debt set forth in the Loan Agreement and took further common shares of reorganized Debtor. Bzinfin was committed to funding future equity contributions in exchange for additional preferred shares of the Debtor.

47. The obligations set forth in the Loan Agreement matured March 30, 2018. – over five years prior to the Petition Date.

48.     Prior to maturity, in 2013, Bzinfin and the Lenders entered into an Assignment and Assumption Agreement with an effective date of November 27, 2013 (the "<u>Assignment</u>"). The Assignment is also not attached to the Proof of Claim.

49.     Pursuant to the Assignment, Bzinfin exercised rights it had pursuant to the 2012 Chapter 11 Plan to acquire all of Assignors' rights as Lenders under the Loan Agreement, all of Lenders' rights with respect to "Holders Plan Payments" as set forth in the Plan, all of Lenders' rights with respect to shares of the Debtor (constituting 2,522,877 shares), and all of Lenders' rights in claims against any person with regard to the Loan Agreement. Accordingly, upon the effective date of the Assignment, Bzinfin acquired nearly all of the equity of the Debtor. In addition, there is ambiguity in the Assignment with respect to whether before the effective date of the Assignment, the Lenders released their claims against the Debtor, EnerDel and other related parties.

### C. <u>Purported Sale of Zingarevich/Bzinfin's Ownership Interest in the Debtor.</u>

50.     Pursuant to the amended consolidated Federal corporate tax return for the tax year ending December 31, 2021, Bzinfin owned 98.69% of the voting stock in the Debtor. Approximately one year prior to the Petition Date, on June 6, 2022, Bzinfin purported to sell all of its shares in the Debtor to PLH Energy, LLC for $1. Notwithstanding such sale, Bzinfin retained the right to 85% of the net proceeds of any sale of the Debtor to a third-party within 15 years and the right to be paid 85% of the Debtor's net profits for 15 years. Additionally, Bzinfin held the right to appoint two non-voting board observers to the board(s) of the Debtor and/or EnerDel or to replace one board observer with a voting director on the Board of Directors.

51.     In that position, Bzinfin exerted so much control over the Debtor and EnerDel that EnerDel listed Bzinfin as a person "in control of the Debtor at the time of filing of this case" in response to Item 28 on its Statement of Financial Affairs.

52.     Subsequent to purportedly selling its equity interest in the Debtor, Bzinfin filed its Financing Statement purporting to perfect its interest in whatever loan that existed pursuant to the Loan Agreement ten and a half years after the date of the Loan Agreement on December 2, 2022, and within one year of the Petition Date.

53.     Just three months later on March 2, 2023, Zingarevich caused another wholly owned entity, ALF Consulting SA, to "lend" $350,000.00 to the Debtor pursuant to the Promissory Note supposedly pursuant to the Loan Agreement, which by its own terms had matured in 2018.  In so doing, the parties adopted terms from the Loan Agreement such as "maturity date," which was defined in the Loan Agreement as March 30, 2018, five years prior to the date of the Note.

54.     ALF Consulting SA has never filed a financing statement or otherwise perfected any security interest in any property of the Debtor or EnerDel.  The Note includes no grant of a security interest.

55.     Since 2002, it is believed that the Debtor and EnerDel have never been independent from Bzinfin and its beneficial owner Zingarevich despite what Bzinfin tried to put on paper.

56.     Although additional discovery is anticipated, there is sufficient documentation and evidence at this point to determine that any purported lien, encumbrance, claim or interest that is held by Bzinfin is in bona fide dispute.

## VII. RELIEF REQUESTED

57. The Trustee requests entry of an order, substantially in the form of **Exhibit C**, as follows:

   (a) Authorizing the Trustee, on behalf of the Debtor's bankruptcy estate, to sell the Ener1 Intellectual Property outside the ordinary course of business pursuant to section 363(b) of the Bankruptcy Code at a public auction to be conducted by the Auctioneer;

   (b) Directing that, pursuant to section 363(f) of the Bankruptcy Code, the sale of the Ener1 Intellectual Property shall be free and clear of all liens, encumbrances, claims and interests (including but not limited to any interest held by Bzinfin), with all such valid liens, encumbrances, claims and interests attaching to the sale proceeds in the same order, priority and validity that presently exists, subject to all claims of the Trustee and the EnerDel Trustee;

   (c) Directing the sale of the Ener1 Intellectual Property be "AS IS, WHERE IS, WITH ALL FAULTS," with no representations or warranties of any kind made by the Trustee;

   (d) Authorizing the Trustee to execute any documentation necessary to effectuate the sale of the Ener1 Intellectual Property;

   (e) Finding that section 363(f)(4) of the Bankruptcy Code has been satisfied as it relates to any purported lien, encumbrance, claim or interest held by Bzinfin in the Ener1 Intellectual Property;

   (f) Authorizing the Trustee to disburse from the sale proceeds of the Ener1 Intellectual Property, to pay the Debtor's estate's proportionate share of the costs and expenses of the auction sale as determined by the Trustee and the EnerDel Trustee, including the buyer's premiums, fees and expense reimbursements owed to the Auctioneer, which shall remain subject to final Court approval;

   (g) Authorizing and directing the Trustee to retain the excess proceeds from the auction until further order by the Court; and

   (h) Waiving the requirements of Bankruptcy Rule 6004(h).

58. By separate yet contemporaneous application, the Trustee is requesting the Court authorize the employment of the Auctioneer as auctioneer to conduct the online auction of the Ener1 Intellectual Property.

## VIII. GROUNDS FOR GRANTING RELIEF

### A. Sale of the Ener1 Intellectual Property Pursuant to Section 363(b).

59. After notice and a hearing, section 363(b) of the Bankruptcy Code authorizes the sale of property of the estate outside the ordinary course of business if the debtor has articulated a business justification for the sale. *In re Schipper*, 933 F.2d 513, 515 (7th Cir. 1991) (internal citations omitted). The Seventh Circuit has clarified that approval is warranted if it "makes good business sense" (i.e., if "the creditors as a whole … benefit"). *In re Dvorkin Holdings, LLC*, 2016 WL 1029387 at *4 (quoting *Retired Pilots Ben. Prot. Ass'n v. United Airlines, Inc.*, 443 F.3d 565, 571-72 (7th Cir. 2006)).

60. Pursuant to Bankruptcy Rule 6004(f)(1), "[a]ll sales not in the ordinary course of business may be by private sale or by public auction."

61. The Trustee and the EnerDel Trustee have determined that the sale of the Personal Property and Intellectual Property by online auction is in the best interest of each of the respective bankruptcy estates and their creditors. Without the liquidation of the Personal Property and the Intellectual Property in an efficient manner and free and clear of any interest, administrative expenses of EnerDel's estate will continue to increase, and the EnerDel Trustee will have no means to pay for such expenses. The sale of the Personal Property and the Intellectual Property will allow the Trustee and the EnerDel Trustee to wind up the business affairs of the Debtor and EnerDel, pay administrative expenses, will provide a safe mechanism to remove potentially hazardous lithium ion batteries from the Anderson Locations, which are **not** property of either the Debtor or EnerDel, further investigate the financial affairs of the Debtor and EnerDel to determine what other asset may be available to pay creditors, and likely make a

15

distribution to unsecured creditors, who otherwise would be subject to Bzinfin taking control of the assets and never receive any payment on their claims.

B. **Sale Free and Clear of Any Interest Pursuant to Section 363(f).**

62. Section 363(f) of the Bankruptcy Code provides that a debtor may sell property under section 363(b) of the Bankruptcy Code "free and clear of any interest in such property of an entity other than the estate, only if— . . . (4) such interest is in bona fide dispute.

63. Any purported lien, encumbrance, claim or interest of Bzinfin is in bona fide dispute, as set forth above. It is unclear whether Bzinfin is owed anything at all by either the Debtor or EnerDel, and if there are amounts owed to Bzinfin, it is unclear what those amounts are or how they were calculated.

64. Additionally, any amounts owed are at best unsecured claims against the Debtor and EnerDel in light of the fact that the Trustee and EnerDel Trustee can avoid, pursuant to section 544 of the Bankruptcy Code, any transfer obtained by Bzinfin pursuant to the Financing Statement that was filed less than one year prior to the Petition Date. Moreover, Bzinfin failed to record any purported lien with the United States Patent and Trademark Office and the United States Copyright Office.

65. Pursuant to section 101(31)(B) of the Bankruptcy Code, an insider of a debtor that is a corporation includes, but is not limited to, a director of the debtor or a person in control of the debtor. Here, based on the currently known facts and EnerDel's own Statement of Financial Affairs, Bzinfin is an insider of the Debtor and EnerDel. Accordingly, the perfection of Bzinfin's lien is an avoidable preferential transfer pursuant to section 547 of the Bankruptcy Code.

66. Further, given Zingarevich/Bzinfin's long history with the Debtor and EnerDel, more likely and at best, any amounts invested by Zingarevich/Bzinfin in either the Debtor or EnerDel are simply that – investments – infusions of equity in an entity it owned until just less than one year prior to the Petition Date and over which it exerted control just prior to the Petition Date.

67. The Seventh Circuit has held that to determine what constitutes a bona fide dispute, "the bankruptcy court must determine whether there is an objective basis for either a factual or legal dispute as to the validity of debt." *In re Busick*, 831 F.2d 745, 750 (7th Cir. 1987). "Under this standard, a court need not determine the probable outcome of the dispute, but merely whether one exists." *See In re Octagon Roofing*, 123 B.R. 583, 590 (Bankr. N.D. Ill. 1991) (citing *Busick*, 831 F.2d at 750); *see also In re Smylie Bros. Brewing Co.*, 651 B.R. 252, 260 (Bankr. N.D. Ill. 2023) ("The court need not resolve these issues . . . The existence of an objective basis for these issues, however, means that there is a bona fide dispute as to [creditor's] interest in this estate property. Since there is a bona fide dispute regarding [creditor's] interest, the Trustee may sell property free and clear of that interest.").

68. The purpose behind section 363(f)(4) of the Bankruptcy Code is to allow the sale of property of the estate free and clear of disputed interests so the liquidation of the assets is not unnecessarily delayed while the disputes are being litigated. *Moldo v. Clark (In re Clark)*, 266 B.R. 163, 171 (B.A.P. 9th Cir. 2001).

69. Here, the Trustee has an objective basis to dispute the purported interest held by Bzinfin, and therefore, pursuant to section 363(f)(4) of the Bankruptcy Code, the Trustee can sell the Ener1 Intellectual Property free and clear of any alleged interest held by Bzinfin.

70. Pursuant to Bankruptcy Rule 6004(f)(1) and S.D.Ind. B-6004-3, in the event this motion is granted, a report of sale shall be filed by the Trustee in this case and by the EnerDel Trustee in the EnerDel Case within fourteen days of the later of the completion of the sale or the last schedule sale date.

71. Pursuant to S.D.Ind. B-6004-1(b), all proceeds from the sale of the Ener1 Intellectual Property will be held by the Trustee until further order of the Bankruptcy Court.

72. Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the sale, use or lease of property other than cash collateral is stayed until the expiration of fourteen days after entry of the order, unless the court orders otherwise." The Trustee requests the Court order authorizing the sale of the Ener1 Intellectual Property be effective immediately upon entry of the order to allow the Trustee to timely and expeditious consummate the proposed auction sale.

## IX.  NOTICE

73. Contemporaneously herewith, the Trustee and the EnerDel Trustee are also filing their Motion to Limit Notice on the Trustee's Motion to Sell Property Free and Clear of Any Interest by Public Auction with No Previously Identified Initial Bidder, seeking to limited notice of this motion to the following parties: (a) the United States Trustee; (b) the Debtor's counsel; (c) all parties who have requested notice pursuant to Bankruptcy Rule 2002 in this case and in the EnerDel Case; (d) all creditors who have filed proofs of claim in this case and the EnerDel Case as of the date of the filing of this motion; and (e) the Interested Parties (collectively, the "Notice Parties"). In accordance with Bankruptcy Rule 6004(c), this motion and the related objection notice will be served on the Notice Parties in the manner of service provided for service of a summons and complaint pursuant to Bankruptcy Rule 7004.

74.     Contemporaneously herewith, the Trustee and the EnerDel Trustee are also filing their Motion to Shorten Notice on the Trustee's Motion to Sell Property Free and Clear of Any Interest by Public Auction with No Previously Identified Initial Bidder seeking to shorten the time for parties to object to this motion to seven days.  Such relief is necessary in order for the Auctioneer to begin marketing the auction and to complete the auction in a timely manner, which will avoid unnecessary administrative expenses.

75.     If the foregoing motions are granted, the EnerDel Trustee will serve this motion, the motions to shorten notice, and any orders granting the motions to shorten notice on the Notice Parties by fax, e-mail, hand delivery, or overnight delivery.  To the extent counsel for a Notice Party has appeared in this case or the EnerDel case, such counsel shall be substituted for the Notice Party and will be served electronically through the Court's electronic filing system or by email if such counsel has filed a request for notice.

**WHEREFORE**, the Trustee respectfully requests entry of an order, substantially in the form attached as **Exhibit C**, and granting the Trustee all other just and proper relief.

Respectfully submitted,

RUBIN & LEVIN, P.C.

Dated: October 11, 2023

*/s/ Meredith R. Theisen*
　　Meredith R. Theisen

Deborah J. Caruso, Esq.
James E. Rossow Jr., Esq.
Meredith R. Theisen, Esq.
135 N. Pennsylvania Street, Suite 1400
Indianapolis, IN 46204
Telephone:  (317) 634-0300
Facsimile:  (317) 263-9411
Email: dcaruso@rubin-levin.net
　　　jim@rubin-levin.net
　　　mtheisen@rubin-levin.net

*Counsel for Deborah J. Caruso, Trustee*